IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

April 28, 1999

Cecil Crowson, Jr.
**Appellate Court
Clerk**

HARRIETT K. JINKS          ) BRADLEY COUNTY
                           ) 03A01-9807-CV-00212
    Plaintiff-Appellee    )
                           )
                           )
    v.                    ) HON. LAWRENCE H. PUCKETT,
                           ) JUDGE
                           )
DAVID MERLE JINKS          )
                           ) AFFIRMED IN PART;
    Defendant-Appellant   ) REMANDED IN PART


ROBERT S. THOMPSON OF CLEVELAND FOR APPELLANT

RANDY G. ROGERS OF ATHENS FOR APPELLEE



O P I N I O N



                                                Goddard, P.J.



       David Merle Jinks appeals a Final Decree of Divorce entered by the Circuit Court of Bradley County. Mr. Jinks contends that the Circuit Court erred by not adequately labeling the couple's assets as either marital property or separate property, and, consequently, the division of that property was incorrect. Additionally, Mr. Jinks alleges the award of alimony was inappropriate under the circumstances, or alternatively, that both the amount of the alimony and the duration of the payments are excessive.

I.    Facts

The facts of this case are for the most part not disputed.  Yet, even a quick review of the factual evidence shows that this marriage was never destined for greatness.  Mr. and Ms. Jinks were married on August 28, 1982, in Bradley County.  This apparently was the third marriage for both parties.[1]  The Jinks had no children during the marriage.

The record shows that, as of trial, Ms. Jinks has been employed with Dana Corporation for the last ten years as a personnel assistant earning $8.70 per hour.  Ms. Jinks had two years of college education and also had periodic training through job related educational courses.

Mr. Jinks worked as an employee of Allied Signal during the course of the marriage.  He was employed as a supervisor making $38,000 per year.  Mr. Jinks also served in the Army National Guard.  As of March 13, 1998, Mr. Jinks claimed that he had been terminated by Allied Signal from his job due to a reduction in the work force.  In response to his motion to terminate alimony, however, the Circuit Court found that Mr. Jinks had suffered no decrease in earnings, and nothing was offered to this Court by Mr. Jinks to suggest otherwise.

---

[1]In his deposition, Mr. Jinks testified that he had only been married twice; however, in his answer to the complaint, Mr. Jinks incorporated Ms. Jinks' claim of three marriages for the both of them.  We are left merely to guess at which is correct.

Prior to the divorce, the Jinks, whether jointly or individually, had maintained or contributed several assets to their union. In addition to their marital residence, the Jinks owned a rental home. Both had 401 K plans. Mr. Jinks had earned points toward a military retirement and, as of trial, participated in Allied Signal's pension plan. Additionally, the Jinks owned stock in several corporations, several bank accounts, and three automobiles.

Over the course of the marriage, Mr. Jinks had numerous affairs with several women. Ms. Jinks suspected as much and had previously filed for divorce in 1991. On second thought, however, she dismissed that suit in an effort to reconcile their differences. From that point on, the Jinks maintained separate financial accounts, and, in hindsight, separate lives. During Christmas of 1993, Ms. Jinks caught Mr. Jinks with another woman. Again, Ms. Jinks looked past her husband's improprieties. Finally, in 1995, Ms. Jinks filed the complaint upon which this appeal is based. Shortly thereafter, Ms. Jinks learned from one of her husband's former lovers of two more relationships in which Mr. Jinks had engaged.

At trial, Mr. Jinks testified to an alleged affair between Ms. Jinks and one of her co-workers during 1985. Mr. Jinks originally learned of the alleged affair from the co-worker's wife. The wife had a secret audio tape of a telephone conversation between Ms. Jinks and the co-worker. Apparently,

the tape only revealed the co-worker's advances towards Ms. Jinks. When news of the tape broke, Mr. Jinks and Ms. Jinks confronted the co-worker, and both Ms. Jinks and the co-worker denied the allegations of unfaithfulness. Mr. Jinks testified at trial that he never believed his wife's denials.

In his deposition, Mr. Jinks complained that his wife lived above their means by taking extravagant trips to Memphis, Orlando, and Baltimore. In his view, they could not afford these trips because of the debts they owed, and certainly he could not support that type of lifestyle. When asked, Mr. Jinks admitted that he had no idea how much money Ms. Jinks spent on the trips because it came from her own bank account. Nevertheless, Mr. Jinks offered these trips as further evidence that he should be awarded the divorce. Ms. Jinks testified that these trips were part of her active participation in the Bradley County Republican Women's Club.

Ms. Jinks' participation in the club lessened after she contracted Guillain-Barre disease in 1990. The illness caused her to lose total muscle control over her body and six months of work. She spent 30 days in the hospital recovering from the disease. In 1994, Ms. Jinks was again struck by the disease missing six months of work and spending 21 days in the hospital. During the periods of her illness, Ms. Jinks was taken care of by her sister, Janet Davis. Ms. Davis testified that instead of

4

offering his assistance during Ms. Jinks' illness, Mr. Jinks kept late hours, coming home at 1 or 2 o'clock in the morning.

At trial, Ms. Jinks testified that she currently feels the best she has since 1990, although, she takes several prescription medications including an antidepressant. The record does not show whether Ms. Jinks anticipates another attack from the disease, and no expert medical opinion was offered to the Trial Court on that subject.

Ms. Jinks sued for divorce on June 5, 1995, claiming inappropriate marital conduct on the part of Mr. Jinks as the basis for her complaint. The parties had entered into a divorce settlement on November 29, 1995. This agreement divided the parties' assets and awarded Ms. Jinks continued health coverage through Mr. Jinks' employer for 18 months. After that time, Ms. Jinks was to receive alimony in the amount of $300 per month for an additional five years.

In May of 1996, Ms. Jinks filed a motion to set aside the settlement agreement based on Mr. Jinks' fraud and perjured testimony. Specifically, Ms. Jinks alleged that Mr. Jinks had hidden $17,000 of financial assets during the divorce proceeding. In response to this motion, Mr. Jinks asked the Court to overrule Ms. Jinks' motion and enter the final decree of divorce as the parties had originally agreed upon.

The Circuit Court ruled in favor of Ms. Jinks' motion and after a trial on the matter entered a final decree of divorce in her favor on February 10, 1998. Based on the evidence presented at trial, the Circuit Court awarded Ms. Jinks an additional five years of alimony for a total of ten years of alimony at $300 per month. During the course of the trial, one of Mr. Jinks' former lovers testified that she kept a secret safe deposit box in her name at a local bank for his benefit. Over the years, Mr. Jinks deposited approximately $15,000 into the safe deposit box. The Trial Judge found that the money Mr. Jinks had kept hidden from Ms. Jinks was marital property, and, therefore, Ms. Jinks was given half of the $15,000. The Trial Judge stated that the final decree only modified the parties' original settlement agreement, the final decree did not replace the parties' original agreement.

Mr. Jinks timely filed his notice of appeal on March 9, 1998. Mr. Jinks presented two issues for appeal: first, whether the Trial Court erred in determining the separate property, marital assets and division of assets of the parties, and, second, whether rehabilitative alimony was an appropriate award under the circumstances, and, if so, whether $300 for a term of ten years is appropriate.

II. Classification of Property

In his brief, Mr. Jinks argues that the Trial Court erred because it failed to divide the Jinks' property into

marital property and separate property.  Tennessee law supports this argument.  The division of a marital estate necessarily entails the classification of the parties' property as either marital or separate property.  <u>Wade v. Wade</u>, 897 S.W.2d 702, 713 (Tenn.Ct.App.1994); <u>see also</u> T.C.A. 36-4-121.

The Trial Judge cannot be faulted for his failure to classify property as separate or marital because the majority of the Jinks' property had already been divided voluntarily by them.  As the trial record shows, the Trial Judge only modified the agreed settlement, he did not supplant it.

Because our standard of review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, Tennessee Rules of Appellate Procedure 13(d); <u>Loyd v. Loyd</u>, 860 S.W.2d 409, 411 (Tenn.Ct.App.1993), we are afforded the opportunity to review the appellate record in full and make our own determination of what is in fact marital property, separate property, or undetermined by the record.  In the spirit of judicial economy and in order to forestall another motion by either party to set aside the remainder of the settlement agreement, we will not limit our review to the modified sections of the settlement agreement; instead, our review will include the division of all the parties' property whether agreed to voluntarily by the parties or the subject of the Circuit Court's decree.

A.

Marital property is defined as:

(1)(A) . . .all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

(C) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

T.C.A. 36-4-121(b)(1)(A)-(C); see also Wade v. Wade, 897 S.W.2d 702, 713 (Tenn.Ct.App.1994); Brown v. Brown, 913 S.W.2d 163, 167 (Tenn.Ct.App.1994).

We find the following property to be marital property as defined by T.C.A. 36-4-121(b)(1)(A) based on the undisputed proof offered in the record that the property was acquired during the marriage and before the date of the final divorce hearing:

1.   The marital residence located at 908 Harrison Pike, Cleveland, Tennessee.

2.   The 1991 Toyota Pick-up Truck.

8

3. The 1984 Honda Car

4. All bank accounts and stock that were either acquired or accumulated during the marriage including a $5000 certificate of deposit; a $3100 checking account; a $1000 management account; $750 in savings bonds; $15,000 in a safe deposit box; $3000 of Westinghouse Stock; $3500 of Flagship Stock; $3000 of Cifra stock; and $900 of Dana stock.

5. All retirement benefits that were either acquired or accumulated during the marriage including Ms. Jinks' IRA account; Ms. Jinks' Windsor Fund 401K plan; and Mr. Jinks' 401K plan.

6. Mr. Jinks' partnership investments, profits, and property that were acquired or accumulated during the marriage. This includes 22 acres of property bought for $17,000; and four acres of property on Highway E-11 in Moshiem, Tennessee, purchased at auction for $10,750. These investments include any money contributed to the partnership and bank stock in Rogersville, Tennessee.

Only property acquired or accumulated within the time period of the Jinks' marriage until the date of the divorce hearing shall be included within this category of marital property. Any accumulation of earnings or profits in any of the above listed assets after December 13, 1996, the date of the final divorce hearing, shall inure to the benefit of the spouse

9

who retains the residual of that property after its division. <u>See</u> <u>T.C.A.</u> 36-4-121(b)(1)(A).

## B.

We find the following to be marital property as defined by TCA 36-4-121(b)(1)(B) based on the undisputed proof offered in the record that it represents an increase in the value of property acquired before the marriage, and because both spouses substantially contributed to its preservation and appreciation during the course of the marriage:

1.  The increase in value of Mr. Jinks' pension plan with Allied Signal beginning on August 28, 1982.

2.  The increase in the value of the rental home located at 490 Central Avenue, NW, Cleveland, Tennessee, beginning on August 28, 1982.

3.  The increase in the value of Mr. Jinks' military retirement per his service with the United States Army and the Army National Guard beginning on August 28, 1982.

Again, any accumulation of earnings or profits in any of the above listed assets after December 13, 1996, shall inure to the benefit of the spouse who retains the residual of that property after its division. <u>See</u> <u>T.C.A.</u> 36-4-121(b)(1)(A).

## C.

We find the following to be separate property as defined by TCA 36-4-121(b)(2) based on the undisputed proof

10

offered in the record that the property was acquired prior to the Jinks' marriage:

1.  The value of Mr. Jinks' pension plan with Allied Signal which accrued before August 28, 1982.

2.  The value of the rental home located at 490 Central Avenue, NW, Cleveland, Tennessee, which accrued before August 28, 1982.

3.  The value of Mr. Jinks' military retirement per his service with the United States Army and the Army National Guard which accrued before August 28, 1982.

4. The 1981 Nissan Truck.


D.

Based on the record before this Court, there is a legitimate dispute as to what assets among the personal household goods are separate property and marital property.  Undoubtedly the parties own separate property as defined by TCA 36-4-121(b)(2); however, the record and testimony at trial are not adequate for this Court to make a fair determination on the issue.  We remand to the Circuit Court for both parties to submit further proof on the separate or marital ownership of the personal property and for the Circuit Court to divide that property equitably as required by TCA 36-4-121(c).


III. Division of Property

Mr. Jinks states in his appellate brief that the Circuit Court erred in its division of the Jinks' property.

11

Although there is no magic formula that aids in an equitable division of the property, T.C.A. 36-4-121(c) provides a list of factors that must be considered.

> In making equitable division of marital property, the court shall consider all relevant factors including:
>     (1) The duration of the marriage;
>     (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>     (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>     (4) The relative ability of each party for future acquisitions of capital assets and income;
>     (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
>     (6) The value of the separate property of each party;
>     (7) The estate of each party at the time of the marriage;
>     (8) The economic circumstances of each party at the time the division of property is to become effective;
>     (9) The tax consequences to each party; and
>     (10) Such other factors as are necessary to consider the equities between the parties.

T.C.A. 36-4-121(c). In Brown v. Brown, the Tennessee Court of Appeals for the Middle Section summarized the case law that guides the division of marital property:

> Trial courts have wide latitude in fashioning an equitable division of marital property. Fisher v. Fisher, 648 S.W.2d 244, 246 (Tenn.1983). Their decisions must be guided by the factors in Tenn.Code Ann. § 36-4-121(c), Ellis v. Ellis, 748 S.W.2d 424, 427 (Tenn.1988), and must be made without regard to marital fault. Tenn.Code Ann. § 36-4-121(a)(1); Bowman v.

12

> Bowman, 836 S.W.2d 563, 567-68 (Tenn.Ct.App.1991). The
> decision is not a mechanical one and is not rendered
> inequitable because it is not precisely equal, Batson
> v. Batson, 769 S.W.2d at 859, or because both parties
> did not receive a share of each piece of property.
> Thompson v. Thompson, 797 S.W.2d 599, 604
> (Tenn.Ct.App.1990). Appellate courts defer to the
> trial courts in these matters unless their decisions
> are inconsistent with the factors in Tenn.Code Ann. §
> 36-4-121(c) or are not supported by the preponderance
> of the evidence. Barnhill v. Barnhill, 826 S.W.2d 443,
> 449-50 (Tenn.Ct.App.1991).

Brown, 913 S.W.2d at 168.

The Trial Court's division of property in the final decree for divorce does not show inconsistency with the factors listed in T.C.A. 36-4-121(c). In large part, the Trial Court's decree is based upon a settlement agreement voluntarily entered into by both parties. The division of the property, while not equal in all respects, is equitable in light of the respective economic positions of both parties, their respective educations, health risks, and future earning potentials. The parties' debts were divided in an equitable fashion, the majority of the Jinks; stock was split 50/50, and each party retained the use of his or her own vehicles.

Mr. Jinks would prefer this Court to classify the rental home as separate property, thus skewing the equities of the property division in his favor for this appeal. However, Mr. Jinks' ability to attack this award is foreclosed by the fact that the Circuit Court awarded him full interest in this property. Mr. Jinks has already admitted in his deposition that even though he bought the rental home shortly before the marriage

13

to Ms. Jinks, the majority of the mortgage for the house was paid off while the two were married. Any value the house may have as separate property is, therefore, minimal in nature. Once the two were married, Ms. Jinks' contribution to that property was substantial because of her role as wage earner and homemaker in the family. The fact that the rent payments were used exclusively for the payment of the mortgage does not alter our determination.

Likewise, we find that the Trial Court did, in fact, acknowledge T.C.A. 36-4-121(c)(5) in its division of property. This section mandates that the trial court take into account the contribution of each party to the acquisition, preservation, and appreciation to marital or separate property. We find the Trial Court correctly addressed this factor by allowing Mr. Jinks to take free from any interest of Ms. Jinks his share of partnership property and interest, and a portion of his military retirement which Ms. Jinks was potentially entitled to under Tennessee law. Cohen v. Cohen, 937 S.W.2d 823, 830 (Tenn.1996).

Additionally, the Circuit Court acknowledged that a portion of the Allied Signal pension plan was, in fact, Mr. Jinks' separate property. The Circuit Court divided the interest in the pension plan between the two parties beginning upon the date of their marriage. Thus, any interest Mr. Jinks accumulated prior to the marriage was his alone.

14

While it is true that the Trial Court's decree does not describe each individual asset using the exact terms marital property and separate property for the purposes of satisfying T.C.A. 36-4-121, we find, that the Trial Court's failure to use these magic words was *de minimis* in its impact upon Mr. Jinks with respect to the division of property.

The Trial Court is vested with wide latitude to fashion a remedy it deems appropriate under the circumstances and it has done so. Based upon the record before this Court, we cannot say that the Trial Court erred in its determination. Except for the error in the classification and division of personal property that must be resolved on remand, we hold that the Trial Court's division of the Jinks' assets is affirmed subject to the time limitations described in sections II(A) and II(B) of this opinion.

III. Alimony

Mr. Jinks argues that rehabilitative alimony was inappropriate under the circumstances, or, at the least, the award of an amount of $300 per month for ten years was excessive. Mr. Jinks artfully argues in his brief that Ms. Jinks should not be entitled to any alimony payments because she failed to prove that she currently suffers the ill effects of her past illness; Ms. Jinks failed to prove that she has a financial need for the alimony; and Mr. Jinks should not be punished for marital fault because the parties had no sexual relationship since 1992.

15

It is well established in Tennessee, however, that trial courts may exercise broad discretion in determining whether to award spousal support as well as the amount and duration of support if it is awarded. Wilson v. Moore, 929 S.W.2d 367, 375 (Tenn.Ct.App.1996); citing Hawkins v. Hawkins, 883 S.W.2d 622, 625 (Tenn.Ct.App.1994); Loyd v. Loyd, 860 S.W.2d 409, 412 (Tenn.Ct.App.1993). The decision to award spousal support, the amount, and duration are based upon the factors enumerated in T.C.A. 36-5-101(d)(1) and are entitled to great weight on appeal. Wilson, 929 S.W.2d at 375. Thus, appellate courts extend great deference to these decisions unless the evidence does not support them or they are contrary to the public policy of this state. Wilson, 929 S.W.2d at 375.

The General Assembly has clearly defined the public policy in T.C.A. 36-5-101 to support a spousal award based upon economic disparity:

> (d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance.

T.C.A. 36-5-101(d)(1). The Trial Court ordered an award of spousal support based upon the "disparity of earnings of the parties . . ." Not only is this finding supported by the record, it also mirrors the public policy of this state as codified in T.C.A. 36-5-101(d)(1). We hold, therefore, that even if Mr. Jinks is correct about Ms. Jinks' failure of proof and their lack of a sexual relationship, Ms. Jinks is still entitled to spousal

16

support based upon the Trial Courts' finding of economic disparity and the public policy of this state.

The decision of the Circuit Court of Bradley County is, therefore, affirmed in part and remanded in part for further proceedings consistent with this opinion and collection of costs below. Costs of appeal are adjudged against Mr. Jinks and his surety.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.

17